Taylor, C. J.
There is so much natural justice in the common law principle which is ttow brought into dispute; it is so well adapte»! .to meet'the exigencies of men and to provide for the contiendes which might affect their property, that I think it would be a public misfortune, if we felt ourselves bound to decide that it is n< tin force in this State. It certainly would shake a very large proportion of the titles in this country , and render it almost impossible for people hereafter to establish their rights, voder the continual subdivision of lands which our law of descent produces. After a great lapse of time, the law ought to supply that proof, which, according to all *139 probability, once had existence, and might have been pro-cluced, if the subject had been litigated at an earlier period. The loss of papers, the destruction of records, the 44 . ' death of witnesses, are events, some of which .may, and others must happen. But the rights which they established ought not thereby to be affected. It is therefore a very rational distinction made by the law, between length of tirrie operating as a positive bar, and that which is only used by way of evidence. The first is made by act of limitation, conclusive upon Courts and Juries. But when length of time is relied upon as evidence, the jury will believe it or not, according to the attendant circumstances; After a seven years’ possession under á colour of title, they are bound to decide in favour of the Defendants : after a long continued naked possession, the jury will consider how far it goes to convince them that a grant had originally issued. It is an application of the common principle, that where the fact itself cannot be proved, yoii may give evidence of such circumstances, as, in all proba* bility, never would have existed without it,
The design.pf the act of 1791, was to give that, protection to individuals against the State, which the act 1715 had afTorded them against the claims of eaeh other* In other words, to render a certain length of possession a positive bar, which no former law had done. Before any act of limitation had been made to extend to the crown in England, many cases had established the position, that long possessioh in the party might be given in evidence to a jury, that it had originally commenced by á grant, notwithstanding the maxim of Nullum Terfipus; and since those statutes have been passed,* many possessions haVe , . , ,, been quieted against the crown,' by presuming a grant; Yet the argument there is equally applicable, that those Statutes had repealed the common law 5 hut it never was advanced. It is observable too, that some of those decisions were made at a time when the prerogative maxim *140 received a full portion of respect* In truth, it has neve? beén called into practice but by arbitrary princes and unprincipled ministers, and has been considered by the best Í , ^ , , , and writers, as repugnant to natural equity and the maxims of a free "government. The principle of presuming a grant has been carried to a great extent in thé case Edridge v. Knott,* where Lord 3ia?u-/teld says, “ fo js not t]lat such cases, the Court really thinks that á granthas been made ; because it is not probable a giant should have existed Without its being upon recoid; but they presume the fact for the purpose and from a princi-pe of trying the possession.” Üpori the first question, therefore, I am of opinion, that the evidence of possession prior to the years and 1781, Was properly received. As to the second question^ I think that the possession of the Defendants was coeXtébsíVe with their title. When that is established, either by the production of a grant, ■which was not doné, or by evidence to enable the jury to presume a grant, which was given,—the possession, in contemplation of law, extends to the boundaries of thé title; consequently a possession of part is á possession of the whole. The length of possession was quite sufficient to warrant the finding of the jury. The other circum* stances in the case added much to its weight, such as the destruction of the clerk’s office, a patent of 1135, calling for Brompton by name, and the place being noted as the residence of the Governor. Another circumstance, though not appearing in the case, must have been well known to the jury as a historical fact; viz. that in that part of the country, great changes of property had been occasioned-by the Revolution. Many of the inhabitants joined the enemy, and never returned to their homes ; and valuable estates are now held solely under the petitioning law. All these circumstances must 'greatly contribute to the difficulty of deducing a title, and especially call for the appliCation of legal rules which promote quiet and repose.
*141 The colour of title was, I think, properly setup, under tne circumstances. And my opinion, upon all «the questions, is, that there ought not to be a new trial.
Seawell, J.
The motion for a new trial is grounded upon a supposed misdirection of the Judge below in directing the jury, that they were warranted in presuming^ grant, from the circumstances given in evidence, and from the admission of improper evidence to the jury. There were other points made in the case, but they have become, unnecessary to be decided. The last of the points stated, I will consider first.—And upon this Tam clearly of opinion, the Judge did right in leaving the facts of the possession in If68 and 1769 to the jury, though there even Was no connection proven between such possession and that under whom the Defendant claimed. For, as against the State, it was a circumstance from which it might be ipferred that the State had parted with its right, as well as if those in possession had been successive claimant^, from one another. The evidence offered in such a case, was not to make a title in the Defendants, but to oust, the claim of the State. These possessions were circumstances., and nothing more, and entitled only to their weight with the jury. The possession, then, from the. year 1780 to the year 1814, with colour of title and by a successive chain of conveyances, was also for the same reason, proper evidence; andiif the jury believed them, there was nothing in law which hindered them from presuming a grant; and this X understand to be the exposition of their being -warranted in presuming a grant. The State, then, being stripped of all its claim, it consequently could convey nothing to the lessor of the Plaintiff. The case being examined noton the improper ground of the finding of the jury, but for mistake in the Court, it is not necessary to advert to all the%ircumstances which might Irave led them to the determination they made. But it has been insisted, that although the lands in question were held by $|eeds «rar since the year 1780, which, according, tp *142 the boundaries called for, comprehended them, yet ag these boundaries were not known and visible, the posses-sjon under them can only be extended to actual occupancy . . ⅝ . 1 J- or cultivation. But as to that, I hold the principle clear, that the possession of every individual shall be deemed and hold according to the extent of his deed, unless there be an actual adverse possession to countervail this presumption, or unless where it is rendered inefficient by a superior title; in which last case, the law presumes him to be possessor who has( the title. From this state of things, it frequently happens, that persons owning adjoining tracts, which lap upon each other, where neither is in the actual possession of the part covered by both conveyances, will be deemed in possesion according to the title. The possession of the part, therefore, under these conveyances, was in law, as much a possession of the whole, as in a case where the boundaries were known and visible.
It is true, the Legislature has not thought proper to pronounce such a case as this a legal bar against the States as they have done where the boundaries were known and visible, but have left it as before the act, to depend upon its own circumstances. I cannot, therefore, assent to the proposition contended for, that this act is to be considered as a repeal of the common law.
Daniel, J.
I shall state the points and then give the answers on each question submitted to this Court.
1st Question. Was it lawful for the Defendants to give evidence of possession, prior to 1780 and !”82, the commencement of the only title they exhibited ?
Answer. The Defendants rested their defence upon length, of possession, connected with a chain of circumstances, as evidence to presume a grant had once issued. And it was quite immaterial whether the grant issued to that person under whom they immediately claimed, or whether it issued to any person or persons no way con- *143 aeeted with them. It is a principle of law, too well settled to be now disputed, that the State has no power to grant lands which have once been granted. Whether the J ° Defendants, or those under whom they claim, had invaded the right or title of any citizen or citizens, is not the inquiry before the Court.. Nor will the determination affect the rights of any third persons. All the Defendants had to do was to show that the State was barred, ten the ground, that it had at some former period, made a grant of these very lands to soiflpother person. A great length of possession has been held prima facie evidence of a grant, both in England and many of the States, and the Court did right in suffering the Defendants to prove it as far back as possible.⅜ 1 ' *
2d Question. Was the possession of a part, in this case, to be considered as the possession of the whole, as _ . the Defendantsdid not claim under, nor bring themselves within the act of 1791, entitled “ An Act for quieting ancient possession i” ’
Answer. It has ever been considered a well settled ' * principle in this State, that possession of a part of a tract of land, was, in law, a possession of the whole ; if this legal or constructive possession which was beyond a party’s fields or enclosures, and within the limits of his title deeds, should not be resisted by an actual possession-† Although in the present case, there are no “ known or visible lines or boundaries,” still the Defendants were at liberty to locate the land and fix its bouadaries, by any of those ways which the law permits, in the absence of known lines and boundaries. The declarations of old men who knew the land and who are now dead, the deeds of neigh-houring tracts of land, calling for the Brampton tract, &c. id cerium est, quod potest redire cerium.
• 3d Question. Was the length of possession, as set up and proved, sufficient to warrant the presumption of a grant ?
*144 Answer. It appears from the case, that some per?o& or other has kept up a continued possession of a part of this -land for 46 years. It also appears, that the Defend* 14 ants and those under whom they claim, have been in pos= session about 35 years, under Colour of title. I think the jury were authorised to find as they did, under this length of possession, connected with the circumstances of a palace once having stood on the land, where some one of the old Colonial Governors fenmerly resided ; Rowan’s patent, dated in 1735, and Bower’s deed in 1754, calling for this tract; the clerk’s office having been burnt as early as 1768 or 1769, at that time containing the records of' land titles.
The law does not fix any definite time to govern a jury, in their presuming a grant once to have existed. In England, the Judges of the Co„r£ of Common Pleas said, they would send r, cause down to be tried, and that it should be leit to the-(jury to presume a grant, (if they thought proper), from the crown, after 20 years’ unclis-turbed possession of a market.* In the case of Hanks v. Tucker,† the party had been in possession 40 years. It is prima facie evidence for a jury : and I cannot think ⅜ new trial should be granted, because the jury found ⅜ verdict against evidence on this point of the case,
4th Question. .'Was jt lawful to introduce or set up any colour of title, without having first shown tha$ the premises had been granted, except under the act of 1791 ?
Answer. The colour of title set up by the Defendants was only introduced as one, among many circumstances? for the jury to presume a grant. And with that object in view, it was properly submitted.
It is stated bY the Court,† that before the act of 1791, “ Persons whose lands had been actually surveyed and marked, and who had obtained patents which had beep lost, and nq registration of them to be foiipd, were liable *145 to be turned out of possession, and, in some instances, had actually lost their lands, by persons who entered claims for them as vacant lands, though there was every reason to suppose, from the length of possession and from the visible boundaries claimed, that the lands had been Once appropriated.”
The preamble to the act of 1791, sets forth nearly the same reasons for the interference of the Legislature. If the Judges of this State ever decided before the year 17§1, as the above quotatifftis induce us to believe they did, I can only say, that, according to the authorities which I have cited on the first point in this case, they decided wrong. I admit that many tracts of land were held in this State, under what is vulgarly called, “ axe entries,” and no patents were ever obtained. Yet these are facts open to proof, and, when established, would most assuredly ascertain that prima facie or presumptive evi-dencé of a grant, which would and in justice should arise, ⅛ such cases as those mentioned in the authority quoted and in the preamble of the act of 1791. Well might the; Legisltature think itself bound to do something. It passed an act remedying the most glaring part of the evil,—or, I might, perhaps with more propriety, say the Blunder,—and left the law in statu quo caite, as to all the other cases not mentioned. This act was made for the causes I have mentioned. It was not intended to repeal the law of presumptions, but to establish it, at least in one case. It has no repealing clause annexed to it. I am, therefore,, of opinion, this case is not to be governed by it.
Ruffin, J. concurred, for the reasons given by Sea-⅜-ELI., J.
Motion for a Hew trial overruled.

21 Jac. 1, c. 2, & 9 Geo. 3.

 Cow. Rep. 215.

 Badle v. Beard, 12 Rep. 5.
Corup Rep. 102 3 Term 158 7 Term 492. 11 East 488. 4 Bur. 1963. 3 East 298, 302.
Archer v. Sadler, 2 Hen & Mun. 370.
Hanks v.Tucker, Tay. 157 Alston v. Saunders 1 Bay. 26
Phillips 119, 120.

 2 Hayw. 114, 123, 345.

 3 East,302 303.

 Tay. 157.

 1 Hayw. 458—9.